UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREAT AMERICAN E&S INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THEOS MEDICAL SYSTEMS, INC.,<br><br>Defendant. | Case No. 17-CV-05660-LHK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 46, 48 |

Plaintiff Great American E&S Insurance Company ("Great American") brings this insurance coverage action against Defendant and Counterclaimant Theos Medical Systems, Inc. ("Theos"), seeking a declaratory judgment that Great American had no duty to defend or indemnify Theos in connection with a contempt proceeding initiated in an underlying action entitled *Malem Medical Limited, et al. v. Theos Medical Systems, et al.*, N.D. Cal., Case No. 3:13-CV-05236 EMC ("Malem Action"). ECF No. 1. Theos and Counterclaimant Saket Bhatia ("Bhatia") brought a counterclaim for breach of the implied covenant of good faith and fair dealing ("bad faith"). ECF No. 16. Both parties have cross-moved for summary judgment. Before the Court are Great American's motion for summary judgment in its favor on the following causes

1

of action alleged by Great American in its complaint: (1) Count 1—Declaratory Relief—No Duty to Defend, and (2) Count 2—Declaratory Relief—No Duty to Indemnify; and (3) on the single counterclaim for bad faith alleged by Theos, *see* ECF No. 46, and Theos and Bhatia's cross-motion for partial summary judgment, ECF No. 48. Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS Great American's motion for summary judgment and DENIES Theos and Bhatia's cross-motion for partial summary judgment.

## I.     BACKGROUND

### A.  Factual Background

This case is a dispute between Great American and Theos regarding Great American's duty to defend and duty to indemnify in connection with a contempt proceeding ("Contempt Proceeding") initiated in the underlying Malem Action based on two insurance policies issued to Theos. ECF No. 1 ("Compl."). The Court first discusses the policies, then the Court discusses the underlying Malem Action and Contempt Proceeding. Finally, the Court turns to Theos's tender of the Contempt Proceeding to Great American.

### 1.  The Great American Policies

Great American issued two general liability policies to Theos: policy number PL 3843140–00, effective July 16, 2015 to 2016 ("2015–16 Policy"), and policy number PL 3843140–01, effective July 16, 2016 to 2017 ("2016–17 Policy"). *See* ECF No. 46-3 ("Edmonds Decl.") ¶ 3; ECF No. 46-4, Ex. A ("Ex. A" or "2015–16 Policy") and Ex. B ("Ex. B" or "2016–17 Policy"). Both policies have identical coverage and exclusions, and there is no dispute that at least one of these policies applies to this dispute.

The Commercial General Liability Coverage Form, CG 00 01 (Ed. 04 13), under the heading "**Coverage B – Personal and Advertising Injury Liability**," provides:

### 1.  Insuring Agreement

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured

2

United States District Court
Northern District of California

against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

…

**2. Exclusions**

This insurance does not apply to:

…

    **e. Contractual Liability**

    "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

    **f. Breach of Contract**

    "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising ideas in your "advertisement."

    …

    **i. Infringement of Copyright, Patent, Trademark or Trade Secret**

    "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

    However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

Exs. A and B, at 0011–12.

The Policies are amended by Endorsement Form ESG 3258 (Ed. 09/14), entitled

"**EXCLUSION – CLAIMS AND SUITS ALLEGING INFRINGEMENT OF**

**INTELLECTUAL PROPERTY OR UNFAIR COMPETITION**," which provides:

United States District Court
Northern District of California

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A. COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, **Coverage B – Personal and Advertising Injury Liability, 2. Exclusions, i. infringement of Copyright, Patent, Trademark or Trade Secret,** is deleted and replaced by the following:

i.  Claim or "Suit" Alleging Infringement of Intellectual Property

   (1) Any claim or "suit" that alleges "personal and advertising injury" arising out of any actual, alleged, or threatened misappropriation, infringement, or violation of any intellectual property or intellectual property right or law of any description, including but not limited to the following:

   (a) copyright;

   (b) patent;

   (c) trademark;

   (d) trade name;

   (e) trade secret;

   (f) trade dress;

   (g) service mark;

   (h) slogan;

   (i) service name;

   (j) description of origin, source, authorship, authenticity, or quality;

   (k) other right to or law recognizing an interest in any expression, idea, likeness, name, style of doing business, symbol, or title; or

   (l) any other intellectual property right or law.

   This exclusion applies to:

   a.  our duty to defend; and

   b.  our duty to pay damages

4

whether such misappropriation, infringement, or violation is committed in your "advertisement" or otherwise.

**B.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage B – Personal and Advertising Injury Liability, 2. Exclusions:**

**Claim or "Suit" Alleging violation of laws concerning Unfair Competition or Similar Laws**

Any claim or "suit" that alleges "personal and advertising injury" arising out of any actual, alleged, or threatened violation of any statutes, common law, of other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations.

This exclusion applies to:

    a.  our duty to defend; and

    b.  our duty to pay damages

whether such violation is committed in your "advertisement" or otherwise.

Ex. A at 0046–47; Ex. B at 0050–51.

Finally, the policies contain the following relevant definitions:

14. **"Personal and advertising injury"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

…

    d.  oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]

…

18. **"Suit"** means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies are alleged.

…

5

Exs. A and B, at 0022–23.

### 2. The Underlying Malem Action

#### a. The Complaint in the Malem Action

On November 12, 2013, Malem Medical, Ltd. and Enuresis Associates, LLC dba the Bedwetting Store (collectively "Malem") initiated *Malem Medical Limited, et al. v. Theos Medical Systems, et al.*, N.D. Cal., Case No. 3:13-CV-05236 EMC ("Malem Action"), in the United States District Court for the Northern District of California before United States District Judge Edward M. Chen, against Theos and Bhatia. *See* ECF No. 46-1 ("Great American RJN"),[1] Ex. H. Malem filed an amended complaint on April 10, 2014, and a second amended complaint on February 9, 2015. *Id.*, Exs. I and J. In the Malem Action, Malem alleged six causes of action against Theos and Bhatia for: (1) unfair competition under federal law (15 U.S.C. § 1125(a)); (2) unfair competition under Cal. Bus. & Prof. Code sections 17200, *et seq.*; (3) false advertising under Cal. Bus. & Prof. Code sections 17500, *et seq.*; (4) conversion under California law; (5) common law misappropriation; and (6) copyright violations. *Id.*, Ex. J.

#### b. The Settlement Agreement and Consent Decree in the Malem Action

In June 2015, Malem entered into a settlement agreement with Theos and Bhatia in which the Malem Action parties agreed to mutually resolve all claims. *Id.*, Ex. K ("Settlement Agreement"). The Settlement Agreement was later reduced to a Consent Decree on July 9, 2015, and a court order on July 14, 2015. *Id.*, Ex. L ("Consent Decree"). Paragraph 9 of the Settlement Agreement, duplicated in the Consent Decree, provided that Theos agreed not to disparage Malem. Settlement Agreement at 4. Paragraph 9 specifically provides:

---

[1] Great American requests judicial notice of fourteen documents that were filed on the docket in the underlying Malem Action. *See* Great American RJN. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). The Court therefore GRANTS Great American's unopposed request for judicial notice.

Case No. 17-CV-05660-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

DEFENDANTS will not disparage PLAINTIFFS or any of their products, services, officers, directors, or employees. For purposes of this agreement, disparage means to take any action which could reasonably be expected to adversely affect the reputation of PLAINTIFFS or-any of their products, services, officers, directors, or employees. This paragraph does not apply to legitimate business concerns raised by DEFENDANTS or to allegations that PLAINTIFFS have violated this Agreement or this Consent Decree.

*Id.*; *see also* Consent Decree ¶ 9.

Paragraph VII of the Settlement Agreement provided that the prevailing party or parties in any action to enforce the Settlement Agreement, or the related Consent Decree, would be entitled to recover their reasonable attorneys' fees and costs. Settlement Agreement at 8. In paragraph 19 of the Consent Decree, Judge Chen retained jurisdiction of the Malem Action for purposes of construction, modification, and enforcement of the Consent Decree. Consent Decree ¶ 9.

### c. The Contempt Proceeding in the Malem Action

On April 28, 2016, Malem's counsel sent a cease and desist letter to Theos's counsel asserting that Theos had violated the Settlement Agreement and the Consent Decree by making disparaging statements about Malem and Malem's products. Great American RJN, Ex. M ("Cease and Desist letter").[2] Malem's counsel wrote: "Should we not be able to resolve the instant dispute by agreement, my clients will file an application to the Court to hold your clients in contempt and for an award of damages and recovery of costs including reasonable attorneys' fees per [Paragraph VII of] the Settlement Agreement." *Id.* at 2. Malem's counsel continued: "Should it prove necessary, my clients will be seeking such relief in connection with their efforts to enforce the Consent Decree and ultimately the Settlement Agree." *Id.*

On February 8, 2017, Malem's counsel sent a follow-up letter to Theos's counsel. ECF No. 48-1 ("Theos RJN"), Ex. A ("February 8, 2017 letter").[3] Malem's counsel wrote: "Based upon the

---

[2] This Cease and Desist Letter was filed as ECF No 85-3 and attached to a declaration in support of Malem's March 8, 2017 "Motion for Order to Show Cause and to Hold Defendants [Theos and Bhatia] in Contempt" ("Contempt Motion").

[3] Theos requests judicial notice of Theos's Exhibit A, which is the February 8, 2017 letter sent from Malem's counsel to Theos's counsel, and which was filed as ECF No. 85-5 and attached to a declaration in support of Malem's March 8, 2017 Contempt Motion. *See* Theos RJN, Ex. A. Great

7

Case No. 17-CV-05660-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

foregoing, we will be filing a request with the Court to enter findings that your clients are guilty of contempt. We will be seeking compensatory and punitive damages as well along with costs and attorneys' fees." *Id.* at 2.

On March 8, 2017, Malem filed a "Motion for Order to Show Cause and to Hold Defendants [Theos and Bhatia] in Contempt" for violating the Settlement Agreement and the Consent Decree. Great American RJN, Ex. N ("Contempt Motion"). Specifically, Malem argued that Theos and Bhatia violated the Consent Decree by filing disparaging and false reports about Malem's products with regulatory authorities in the United States, United Kingdom, Australia, and Norway. *Id.* at 4–7.

In the Contempt Motion, Malem wrote the following questions under the heading "Statement of Issues to be Decided":

> 3. If the Court determines that Defendants are guilty of contempt, what sanctions should the Court impose?

> 4. Are Plaintiffs entitled to the damages caused by the acts of contempt as a sanction?

> 5. If Plaintiffs are entitled to damages for violating the Consent Order, and the Settlement Agreement, including the costs of seeking this relief and the Settlement Agreement, how much are they entitled to?

*Id.* at 3. After the fourth question, Malem included a footnote that stated: "After the initial stages of the contempt matter are resolved, Plaintiffs will file a motion to reopen the case to permit them

---

American objects to taking notice of this letter on the grounds that the letter is irrelevant, unauthenticated, and constitutes hearsay. *See* ECF No. 49 at 15. The Court overrules Great American's objections and GRANTS Theos's request for judicial notice of Theos's Exhibit A. The February 8, 2017 letter was attached to a declaration authored by Malem's counsel and filed as ECF No. 85-5 in the underlying Malem Action. Public records are proper subjects of judicial notice. *See, e.g., Black*, 482 F.3d at 1041 ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). Moreover, the Court already granted Great American's request to take judicial notice of fourteen documents, including the Cease and Desist letter, which was attached to the same declaration authored by Malem's counsel in support of the Contempt Motion and filed as ECF No. 85-3 in the underlying Malem Action. *See supra*, note 1. Great American's contention that the Court should take judicial notice of ECF No. 85-3 but not ECF No. 85-5 in the underlying Malem Action is inconsistent and lacks merit.

to sue for damages under the Settlement Agreement." *Id.* at 3 n.2.

The Contempt Motion also stated under the "relief sought" section that Malem was seeking "[m]onetary damages arising from Defendants' violations of the Consent Order and for breach of the Settlement Agreement" and "[a]ll costs, including attorneys' fees incurred by [Malem] as the result of the contempt including the costs of seeking the instant relief and for breaching the Settlement Agreement." *Id.*

In Malem's argument section, Malem explained:

> Paragraph VII of the Settlement Agreement provides in pertinent part that 'in an action relating to enforcement of . . . the Consent Decree, the prevailing party or parties shall be entitled to recover their reasonable attorneys' fees and costs.' Plaintiffs are seeking such relief in connection with their efforts to enforce the Consent Decree and ultimately the Settlement Agreement.

*Id.* at 8. Malem also explained that "[a] court may assess attorneys' fees or other sanctions under its inherent power for the willful disobedience of a court order." *Id.* at 7. Malem also wrote "the law generally recognizes that a successful moving party in a civil contempt proceeding is entitled to be reimbursed for its legal costs including attorneys' fees . . . attorneys' fees were part of the damages caused by the contempt . . . ." *Id.* at 8.

In Malem's reply, filed April 18, 2017, Malem clarified that it was not seeking damages, only attorneys' fees. Great American RJN, Ex. N ("Contempt Reply") at 4. Specifically, Malem wrote:

> **The Combined Opposition, at page 5, mistakes [Malem's] prayers for costs with a prayer for damages** . . . . That simply is a misreading of the Motion for a Show Cause Order, which only seeks the costs of obtaining the contempt citations. . . . [P]age 3, n. 2, and page 7 where the issue of 'damages' is limited to reopening the case to permit [Malem] to seek 'damages under the Settlement Agreement' which had a prevailing party attorney's fees clause . . . .
>
> **Neither of [Malem's] motions seeks a fine or damages at this point.** There is no question that [Malem] will file a motion to reopen the case to sue for breach of contract, unfair trade practices and trade libel. However, those matters are not before the Court at this time.

*Id.* (emphasis added).

Judge Chen held a hearing on the Malem Action Contempt Motion on April 27, 2017. Great American RJN, Ex. R. On April 28, 2017, Judge Chen issued an order granting the Contempt Motion, and scheduling a one-day contempt bench trial for July 31, 2017. Great American RJN, Ex. S.

On July 20, 2017, Malem filed its trial brief for the Contempt Proceeding. Theos RJN, Ex. B.[4] Malem wrote that it is "seeking relief that is contingent upon the Court finding [Theos and Bhatia] in contempt." *Id.* at 2. Malem also wrote that it is "seeking all costs, including attorneys' fees incurred by [Malem], as the result of the contempt including the costs of seeking the instant relief and for breaching the Settlement Agreement and all damages caused by [Theos and Bhatia's] disparaging communications." *Id.* In the statement of issues to be decided, Malem wrote: "Are Plaintiffs [Malem] entitled to the damages caused by the acts of contempt as a sanction and because of [Theos and Bhatia's] violations of the Settlement Agreement?" *Id.* at 3. "After the initial stages of the contempt matter are resolved, [Malem] will file a motion to reopen the case to permit them to sue for damages under the Settlement Agreement." *Id.*

On July 31, 2017, Judge Chen held a one-day bench trial. *See* Great American RJN, Ex. T ("Contempt Order") at 1. On August 10, 2017, Judge Chen entered an order finding Theos violated "Paragraph 9 of the Consent Decree by making disparaging statements to various

_____

[4] Theos requests judicial notice of Theos's Exhibit B, which is a trial brief filed by Malem as ECF No. 123 on July 20, 2017, in the underlying Malem Action. *See* Theos RJN, Ex. B. Great American objects to taking notice of this trial brief on the grounds that the July 20, 2017 trial brief was never tendered to Great American. *See* ECF No. 49 at 15 (citing *Upper Deck Co. v. Fed. Ins. Co.*, 358 F.3d 608, 613 (9th Cir. 2004)). Theos responds that Great American relied on other pleadings in the underlying action in its own summary judgment motion, including documents after the initial tender in April 2017, and therefore Great American waived this objection. ECF No. 50 at 2. The Court overrules Great American's objections and GRANTS Theos's request for judicial notice of Theos's Exhibit B. Importantly, Great American itself requests judicial notice of documents in the underlying Malem Action that succeed the date of Theos's April 2017 tender, including Judge Chen's August 10, 2017 order and the August 17, 2017 joint case management statement. Moreover, the Court granted Great American's request to take judicial notice of those documents. *See supra*, note 1. Therefore, Theos is similarly granted judicial notice of the July 20, 2017 trial brief. This ruling, however, does not impact the Court's decision on whether, as a matter of law, such information is relevant to the coverage determination, discussed below.

10

regulatory agencies regarding [Malem] and their products and did so knowingly and intentionally and without any legitimate business concern," and that the violations of the Consent Decree constitute civil contempt. *Id.* at 6. Judge Chen scheduled a case management conference and ordered the parties to file a joint statement by August 17, 2017. *Id.*

On August 17, 2017, the parties filed a joint case management statement. Great American RJN, Ex. U. Malem wrote in the joint statement that they "intend to file a motion for costs and other expenses including attorneys' fees and investigators' fees related to the contempt proceeding including the motion for sanctions." *Id.* at 1. Malem also wrote that they "intend to file a motion to amend their complaint to include a cause of action for trade libel and other unfair trade violations (State and Federal) and related damages." *Id.*

### 3. Theos's Tender of the Contempt Proceeding to Great American

Theos did not report the Malem Action to Great American until on or about April 3, 2017, after Theos entered into the June 2015 Settlement Agreement and after Malem had filed the Contempt Motion on March 8, 2017 asserting that Theos had breached the Settlement Agreement and Consent Decree. Edmonds Decl. ¶ 4, Ex. C. On April 4, 2017, Great American sent Theos a letter acknowledging the Contempt Proceeding Claim. *Id.* ¶ 5, Ex. D. Great American sent a second letter to Theos on April 13, 2017. *Id.* ¶ 6, Ex. E. In this second letter, Great American requested that Theos provide Great American "with all pleadings, files, correspondence, and other documents or information relevant to the Contempt Motion." *Id.*

Following Great American's review of the Contempt Proceeding, supporting documents provided by Theos, and the policies, Great American sent another letter to Theos, dated May 15, 2017, advising that coverage for the Contempt Proceeding may not be available under the policies because the Contempt Proceeding did not appear to implicate covered damages, and because coverage also appeared precluded by the Breach of Contract Exclusion and the Intellectual Property Rights and Unfair Competition Exclusions in the policies. ECF No. 46-5 ("Simantob Decl.") ¶ 5, Ex. F. Great American further wrote: "please note that this letter is not a declination of

Case No. 17-CV-05660-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

coverage in connection with the Contempt Proceeding," and rather that Great American is requesting "any additional arguments, facts or information" Theos may have before Great American makes a final coverage decision. *Id.* On June 29, 2017, in response to Great American's letter, Theos sent an e-mail challenging Great American's position, and attaching two exhibits supporting the Contempt Motion, which Great American already had considered. *Id.* ¶ 6, Ex. G. However, Theos did not provide Great American with any new or additional arguments, facts, information, or documents. *Id.* ¶ 7.

### B. Procedural History

On September 27, 2017, Great American filed the instant suit against Theos, seeking declaratory relief that Great American had no duty to defend or indemnify Theos in connection with the Contempt Proceeding in the underlying Malem Action. ECF No. 1. Theos answered on December 26, 2017. ECF No. 16. In the same document, Theos and Bhatia brought a counterclaim for bad faith. *Id.* Great American answered the counterclaim on January 16, 2018. ECF No. 17.

On September 27, 2018, Great American filed one of the instant motions for summary judgment, or in the alternative, partial summary judgment. ECF No. 46 ("Great American Mot."). Theos and Bhatia opposed and filed a cross-motion for partial summary judgment in the same document on October 11, 2018. ECF No. 48 ("Theos Mot."). Great American filed its reply on October 18, 2018. ECF No. 49 ("Great American Reply"). On October 25, 2018, Great American filed an opposition to Theos's motion. ECF No. 55 ("Great American Opp'n"). Theos did not file a reply.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a

12

Case No. 17-CV-05660-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. However, on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

**B. State Law in Diversity Cases**

"In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530

(9th Cir. 2011). If the state's highest court has not decided an issue, it is the responsibility of the federal courts sitting in diversity to predict "how the state high court would resolve it." *Id.*; *Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation marks omitted). In the absence of clear authority, the Court looks for guidance from decisions of the state appellate courts and other persuasive authorities, such as decisions from courts in other jurisdictions and treatises. *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996).

## III.    DISCUSSION

The parties' cross-motions for summary judgment address two main issues: (1) Great American's claims for a declaration that Great American had no duty to defend or duty to indemnify Theos in the Contempt Proceeding in the underlying Malem Action; and (2) Theos and Bhatia's counterclaim for bad faith. The Court addresses each issue in turn.

### A.  Great American's Duty to Defend and Duty to Indemnify Claims

Great American seeks a declaratory judgment that Great American had no duty to defend or duty to indemnify Theos in connection with the Contempt Proceeding in the underlying Malem Action. Because the duty to defend is broader than the duty to indemnify, the Court addresses Great American's duty to defend and duty to indemnify claims together. The Court first explains the law on duty to defend before turning to Great American's arguments.

Under California law, "[a] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity" under the policy. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) ("*Montrose I*") (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)). The duty to defend is broader than the duty to indemnify and, thus, "an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Id.* (citing *Horace*, 4 Cal. 4th at 1081).

While the duty to defend is broad, it "is not unlimited." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995). In determining whether there is a duty to defend, courts must look to the

Case No. 17-CV-05660-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

complaint in the underlying action and "all facts known to the insurer from any source." *Montrose I*, 6 Cal. 4th at 300. The ultimate question is whether the facts known to the insurer at the time it refused to defend the underlying action created the potential for coverage under the policy. *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995) ("[T]he issues here are what facts respondent knew at the time appellants tendered the defense of the Ferrando lawsuit, both from the allegations on the face of the third party complaint, and from extrinsic information available to it at the time; and whether these known facts created a potential for coverage under the terms of the Policy."). If there was no potential for coverage under the insurance policy based on the complaint in the underlying action and extrinsic facts made known to the insurer, then the insurer has not breached the insurance contract by refusing to defend. *Montrose I*, 6 Cal. 4th at 295 (holding that duty to defend ends when it is apparent there is "no potential for coverage"). "The insured has the burden of showing that there was an 'occurrence'" covered by the policy. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998).

In interpreting an insurance policy, the Court first looks to the language of the policy itself. "Where no dispute surrounds material facts, interpretation of an insurance policy presents solely a question of law." *Jauregui v. Mid–Century Ins. Co.*, 1 Cal. App. 4th 1544, 1548 (1991). The "clear and explicit meaning" of the provisions, "interpreted in their 'ordinary and popular sense' controls judicial interpretation unless [the disputed terms are] 'used by the parties in a technical sense, or unless a special meaning is given to them by usage.'" *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (1995) ("*Montrose II*").

Additionally, "any provision that takes away or limits coverage reasonably expected by an insured must be conspicuous, plain and clear." *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004) (internal quotation marks and citations omitted). California courts do not apply coverage limitations if the insured has an objectively reasonable expectation of coverage under the policy, and the limitation on that reasonably expected coverage is either (1) not conspicuous, or (2) not plain and clear. *Travelers Prop. Cas. Co. of Am. v. Superior Court*, 215 Cal. App. 4th 561,

15

578 (2013) ("*Travelers*"). The insurer has the burden of showing that a limitation on coverage reasonably expected under the policy is conspicuous, plain, and clear. *Haynes*, 32 Cal. 4th at 1204 ("The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." (citations omitted)).

Great American argues that Great American has no duty to defend or indemnify Theos in the Contempt Proceeding initiated in the underlying Malem Action because: (1) the Contempt Proceeding did not seek covered "damages" under the policies because Malem sought only attorneys' fees and sanctions sought against Theos; (2) even if covered "damages" were sought in the Contempt Proceeding, coverage is further precluded by the policies' Intellectual Property and Unfair Competition Exclusions; and finally, (3) even if covered "damages" were sought in the Contempt Proceeding, the Contempt Proceeding concerned breach of contract claims and therefore coverage is precluded by the policies' Breach of Contract Exclusion. Mot. at 12–23. The Court first discusses whether the relief sought by Malem against Theos in the Contempt Proceeding constituted covered "damages" under the policies and determines it does not. Second, the Court discusses the policies' Intellectual Property and Unfair Competition Exclusions and finds that even if the Contempt Proceeding sought covered "damages," these exclusions would nonetheless bar coverage. Because the Court grants summary judgment for Great American on these two grounds, the Court does not consider Great American's third argument that coverage is also precluded by the policies' Breach of Contract Exclusion.

**1. Whether the Relief Sought by Malem Against Theos in the Contempt Proceeding Constitutes Covered "Damages" Under the Policies**

Great American argues first that the Contempt Proceeding does not fall within the basic scope of coverage in the policies because Malem did not assert a claim for "damages" in the Contempt Proceeding. The Court agrees. The Court first identifies the relevant language in the Great American policies. Second, the Court addresses whether the Contempt Proceeding sought damages covered by the policies. Theos, as the insured, "has the burden of showing that there was an 'occurrence'" covered by the policy. *Blue Ridge Ins. Co.*, 142 F.3d at 1148.

16

The relevant language of Great American's insurance policies provides that Great American "will pay those sums that the insured becomes legally obligated to pay as *damages* because of 'personal and advertising injury' to which this insurance applies." 2015–16 Policy and 2016–17 Policy at 0011–12 (emphasis added). Both parties agree that the polices' insuring clause therefore requires that the Contempt Proceeding assert a claim for "damages"; otherwise, there is no coverage. *See* Great American Reply at 2; Theos Mot. at 9. The parties also appear to agree that the applicability of the "damages" coverage provision presents pure questions of law, on which no further factual development is necessary. *State Farm Fire & Cas. Co. v. Yukiyo, Ltd.*, 870 F. Supp. 292, 294 (N.D. Cal. 1994) ("Where the terms and conditions of an insurance policy constitute the entire agreement between the parties, its interpretation is essentially a question of law, particularly well-suited for summary judgment.").

The crux of the parties' disagreement is over whether the Contempt Proceeding did or did not seek potentially covered "damages" under the policies. The determination of whether Great American had a duty to defend is made by "comparing the allegations of the [underlying] complaint with the terms of the policy." *Ray v. Valley Forge Ins. Co.*, 77 Cal. App. 4th 1039, 1044 (2000) (quoting *Horace Mann Ins. Co.*, 4 Cal. 4th at 1081); *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 889 (2001) ("Courts first determine whether insurers have a duty to defend by 'comparing the allegations of the complaint with the terms of the policy.'" (quoting *Waller*, 11 Cal. 4th at 19)). Here, because Great American and Theos are disputing Great American's duty to defend Theos in the Contempt Proceeding, the Contempt Motion and related pleadings contain the relevant "allegations" for purposes of this determination.

As an initial matter, the parties agree that, at minimum, Malem sought to recover attorneys' fees and sanctions in the Contempt Motion. S*ee* Great American Mot. at 14–15; Theos Mot. at 9–10. Theos does not appear to dispute that attorneys' fees and sanctions are not covered as "damages" under the Great American policies. *See* Theos Mot. at 8–12. The Court finds that under California law, attorneys' fees do not constitute covered "damages." *Travelers Property*

*Cas. Co. of America v. KFx Medical Corp.*, 637 F. App'x 989, 992 (9th Cir. 2016) ("Attorneys' fees are not 'damages' under California law.'" (citing *Cutler-Orosi Unified Sch. Dist. v. Tulare Cnty. Sch. Dist. Liab./Prop. Self-Ins. Auth.*, 31 Cal. App. 4th 617 (1994))); *Combs v. State Farm Fire & Casualty Co.*, 143 Cal. App. 4th 1338, 1345 (2006) ("Attorney fee awards may not normally be considered as 'damages' in that they do not compensate claimants for the injury for which they brought suit."); *San Diego Housing Com'n v. Indus. Indem. Co.*, 95 Cal. App. 4th 669, 689–90 (2002) ("Attorney fee awards are not 'damages' under a CGL policy."). Sanctions also do not constitute "damages." *See, e.g.*, *Ulta Salon, Cosmetics, & Fragrance, Inc. v. Travelers Property Casualty Co. of Am.*, 197 Cal. App. 4th, 424, 432 (2011) (finding no coverage for civil penalties); *Bullock v. Maryland Casualty Co.*, 85 Cal. App. 4th 1435, 1448 (9th Cir. 2001) (same). Therefore, the Court agrees with Great American that to the extent Malem only sought attorneys' fees and sanctions, those claims do not constitute a claim for "damages" that is covered by the policies.

Theos argues in its opposition and partial motion for summary judgment that Malem *also* sought compensatory damages in the Contempt Proceeding. Theos Mot. at 8–10. Theos's argument is based on the fact that Malem stated in the Contempt Motion that it was seeking "*[m]onetary damages* arising from [Theos and Bhatia's] violations of the Consent Order and for breach of the Settlement Agreement." *See* Contempt Motion at 3 (emphasis added); *see also* Theos Mot. at 9–10. Theos focuses on the fact that breach of the Consent Decree was based on Theos's disparagement of Malem. Theos Mot. at 9–11 (arguing that "it is crystal clear that it is clear that Malem sought compensatory damages for disparagement in their moving papers"). Theos also relies on the February 8, 2017 letter from Malem's counsel to Theos's counsel and Malem's July 20, 2017 trial brief to support its argument that Malem was seeking compensatory damages in the underlying Contempt Proceeding. Theos Mot. at 9–10.

The Court finds Theos's arguments unconvincing. First, despite the fact that Malem stated it was seeking "monetary damages" in the relief section of the Contempt Motion, Malem's

United States District Court
Northern District of California

argument section makes clear that Malem was actually seeking attorneys' fees and legal costs. Malem explained that it believed that Theos had breached Paragraph 9 of the Consent Order by making disparaging comments and that Malem believed it was entitled to recover reasonable attorneys' fees and costs for that breach pursuant to Paragraph VII of the Settlement Agreement. *See* Contempt Mot. at 4–8. Malem never stated it was seeking compensatory damages for disparagement. *See id.*

Moreover, to the extent there was any ambiguity in Malem's opening Contempt Motion brief, Malem's reply in the Contempt Proceeding clarified that it was *not* seeking damages for disparagement and instead was seeking only attorneys' fees and costs under the Settlement Agreement:

> ***The Combined Opposition, at page 5, mistakes [Malem's] prayers for costs with a prayer for damages*** . . . . That simply is a misreading of the Motion for a Show Cause Order, which only seeks the costs of obtaining the contempt citations. . . . [P]age 3, n. 2, and page 7 where the issue of 'damages' is limited to reopening the case to permit [Malem] to seek 'damages under the Settlement Agreement' which had a prevailing party attorney's fees clause . . . .
>
> ***Neither of [Malem's] motions seeks a fine or damages at this point.*** There is no question that [Malem] will file a motion to reopen the case to sue for breach of contract, unfair trade practices and trade libel. However, those matters are not before the Court at this time.

Contempt Reply at 4 (emphasis added). Theos's opposition agrees that "Malem's Reply papers do state that they were not seeking damages." Theos Mot. at 4. Under California law, Malem's concession that it was not seeking damages for disparagement confirms there is not duty for Great American to defend. *See, e.g.*, *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1270 (9th Cir. 2010) ("Indeed, in cases where a complaint alleges facts that support a duty to defend, California courts have concluded that there is no duty to defend only when the third-party complaint unambiguously disclaims or concedes an element."); *Low v. Golden Eagle Ins. Co.*, 99 Cal. App. 4th 109, 114 (2002) (concluding there was no duty to defend because "although there is an allegation to the effect the third party plaintiff, Ms. Perez, sustained personal injuries as a result of

19

ingesting claimant's product, no claim for recovery of damages for those alleged injuries is asserted in the complaint. Instead, the following statement appears in paragraph 9: 'Plaintiff expressly disclaims seeking recovery for personal injuries attributable to [consuming the product]'"); *see also, e.g.*, *San Miguel Comm. Assn. v. State Farm Gen. Ins. Co.*, 220 Cal. App. 4th 798, 800–01 (2013) ("The third party's failure to seek compensatory damages against the insured means the dispute is not a claim for damages under the policy. The insurer's defense obligation requires it to provide the insured with a defense against a claim seeking damages potentially payable under the policy, not to defend the insured's honor."). Moreover, the fact that Malem's reply indicated that Malem may seek damages in the future after reopening the underlying Malem Action only confirms that Malem was not seeking damages in the Contempt Proceeding.

Further, Malem's disavowal cannot be defeated by Theos's reference to the February 8, 2017 letter from Malem's counsel to Theos's counsel or Malem's July 20, 2017 trial brief, which both mentioned "damages." *See* Theos Mot. at 9–10. First, the February 8, 2017 letter is not controlling as to coverage because coverage is determined by the pleadings against an insured. *See, e.g.*, *Bullock*, 85 Cal. App. 4th at 1445 ("We seriously doubt that correspondence outside the pleadings which merely hints at a possible litigation strategy . . . is sufficient to establish a duty to defend an otherwise noncovered lawsuit."); *Gunderson*, 37 Cal. App. 4th at 1116 ("Second, none of the allegations concerning damage to the fence, as found in the several letters of Ferrando's attorney and in her responses to discovery requests, were *ever* incorporated in her complaint against appellants."); *Sony Computer Entertainment Am., Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1020–21 (9th Cir. 2008) ("Moreover, the customer complaints of scratches and other damage to discs–which could potentially establish physical damage–were never incorporated into the third party lawsuit.").

The trial brief is also not controlling as to coverage because first, as discussed above, Malem had already disavowed that it was seeking damages. Second, Theos never tendered the July

Case No. 17-CV-05660-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

20, 2017 trial brief to Great American, even after Great American explained on May 15, 2017 that it would decline coverage and requested additional information or documents that Theos may possess relevant to coverage. Simantob Decl. ¶¶ 5–7. Because the trial brief was not tendered to Great American, it cannot establish coverage. *See, e.g.*, *Upper Deck Co.*, 358 F.3d at 613 ("If new extrinsic evidence raises a potential covered claim, the insured should submit a new tender of defense. In the absence of a new tender, the insurer is not charged with knowledge of new extrinsic facts; nor is it under an independent obligation to investigate the potential for coverage."); *Travelers Cas. & Sur. Co. v. Employers Ins. of Wasau*, 130 Cal. App. 4th 99, 110 (9th Cir. 2005) ("Even if the additional allegations would have triggered Wausau's duty to defend, Mydrin never tendered the later complaint to Wausau. An insurer has no duty to continue to investigate the potential for coverage after it makes an informed decision on coverage at the time of tender."); *Gunderson* 37 Cal. App. 4th at 1114 ("[A]n insurer does not have a continuing duty to investigate whether there is a potential for coverage. If it has made an informed decision on the basis of the third party complaint and the extrinsic facts known to it at the time of tender that there is no potential for coverage, the insurer may refuse to defend the lawsuit.").

Therefore, having found that Malem did not assert a claim for covered "damages" in the Contempt Proceeding in the underlying Malem Action, the Court finds that the Contempt Proceeding is not covered under the policies. Thus, with respect to Great American's claims seeking a declaration that Great American does not owe a duty to defend or a duty to indemnify, the Court GRANTS Great American's motion for summary judgment and DENIES Theos and Bhatia's motion for partial summary judgment.

### 2. Whether the Intellectual Property and Unfair Competition Exclusions Preclude Coverage of the Entire Underlying Malem Action

Even if the Court were to assume the coverage provision applied, Great American argues that the policies' Intellectual Property and Unfair Competition Exclusions preclude coverage of the entire underlying Malem Action. Great American Mot. at 23–23; Great American Reply at 9–12. The Court first identifies the relevant exclusion language in the policies. Second, the Court

21

addresses whether the Intellectual Property and Unfair Competition Exclusions bar coverage. Great American, as the insurer, has the burden of showing that a limitation on coverage reasonably expected under the policy is conspicuous, plain, and clear. *Haynes*, 32 Cal. 4th at 1204.

Great American's Intellectual Property and Unfair Competition Exclusions provide that coverage is excluded for:

> **Any claim or "suit"** that alleges "personal and advertising injury" arising out of any actual, alleged, or threatened misappropriation, infringement, or violation of any intellectual property or intellectual property right or law of any description . . .

> **Any claim or "suit"** that alleges "personal and advertising injury" arising out of any actual, alleged, or threatened violation of any statutes, common law, of other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations.

Ex. A at 0046–47; Ex. B at 0050–51. **"Suit"** "means a civil proceeding in which damages because of 'bodily injury,' 'property damage,' or 'personal and advertising injury' to which this insurance applies are alleged." Exs. A and B, at 0022–23.

Great American argues these exclusions bar coverage for the *entire* underlying Malem Action because the Malem Action included claims for infringement of intellectual property rights and unfair competition. *See* Great American Reply at 9–10. Specifically, the Malem Action contained causes of action against Theos and Bhatia for: (1) unfair competition under federal law (15 U.S.C. § 1125(a)); (2) unfair competition under Cal. Bus. & Prof. Code sections 17200, *et seq.*; (3) false advertising under Cal. Bus. & Prof. Code sections 17500, *et seq.*; (4) conversion under California law; (5) common law misappropriation; and (6) copyright violations. *See* Great American RJN, Ex. J. Theos does not contest that the Malem Action included these claims. S*ee* Theos Mot. at 13–14. Instead, Theos argues in opposition that the Intellectual Property and Unfair Competition Exclusions do not apply because a claim for disparagement is independent from these other claims. Theos Mot. at 13–14.

The Court agrees with Great American that these exclusions bar coverage of the *entire* Malem Action, including the Contempt Proceeding. Importantly, the exclusions apply not just to

22

"any claim," but also to any "*suit*" that includes intellectual property or unfair competition claims. *See* Ex. A at 0046–47; Ex. B at 0050–51. The Malem Action constitutes a suit because it was a civil proceeding in which damages were sought, and the Malem Action included intellectual property and unfair competition claims because Malem brought claims for, among other things, unfair competition under state and federal law, and common law misappropriation. *See* Great American RJN, Ex. J. Moreover, the Contempt Proceeding was a part of the Malem Action, that is, part of the same "suit." Both the Malem Action and the Contempt Proceeding were before the same court and had the same case number and caption. Further, Judge Chen specifically retained jurisdiction over the Malem Action to hear the Contempt Proceeding. *See* Consent Decree ¶ 9. Therefore, as the Malem Action was a suit that contained allegations of intellectual property infringement and unfair competition claims, and as the Contempt Proceeding was a part of that "suit," the Court finds that coverage of the Contempt Proceeding is also barred by the Intellectual Property and Unfair Competition Exclusions.

Theos's arguments to the contrary are unavailing. First, Theos's citation to *Western Intern. Corp. Syndication Corp. v. Gulf Ins. Co.*, 222 F. App'x 589, 592–93 (9th Cir. 2007), is unpersuasive because that case concerned policy language differing from the language at issue here. *See* Theos Mot. at 13–14. Specifically, *Western International Corp.* narrowly concerned an exclusion of coverage for "personal injuries regarding '[i]nfringement of copyright trade." 222 F. App'x at 592–93. By contrast, the Intellectual Property and Unfair Competition Exclusions at issue here exclude coverage not only for claims, but also for any "suit" that includes such intellectual property or unfair competition claims. Therefore, Theos's case is inapposite. *See Am. Cyanamid Co. v. Am. Home Assurance Co.*, 30 Cal. App. 4th 969, 978 (1994) ("In questions of insurance coverage the court's initial focus must be upon the language of the policy itself, not upon "general" rules of coverage that are not necessarily responsive to the policy language."). Second, in situations concerning language similar to the exclusions at issue here, courts have held that non-intellectual property claims need not be related to the intellectual property claims for the

exclusion to bar coverage for an entire "suit" when the exclusion language provided that the exclusion applied to the entire suit. *See, e.g.*, *S.B.C.C., Inc. v. St. Paul Fire & Marine Co.*, 186 Cal. App. 4th 383, 397 (2010) ("Here the challenged exclusion is clear and explicit; it expressly states in that in addition to the listed forms of intellectual property infringement, there is no coverage for '*any other injury or damage that's alleged in any claim or suit which also alleges any such infringement or violation.*'" (emphasis in original)); *Tria Beauty, Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. C 12-05465 WHA, 2013 WL 2181649, at *8 (May 20, 2013) (enforcing exclusion where "the plain terms of th[e] exclusion exempted not only trademark infringement claims, but also suits on other claims that also allege trademark infringement.").

Thus, with respect to Great American's claims seeking a declaration that Great American does not owe a duty to defend or a duty to indemnify, the Court finds that the Intellectual Property and Unfair Competition Exclusions provide a second basis to grant Great American's motion. Therefore, the Court also GRANTS Great American's motion for summary judgment and DENIES Theos and Bhatia's motion for partial summary judgment on this ground.

**B. Theos's "Bad Faith" Counterclaim**

Finally, Great American seeks summary judgment on Theos's bad faith claim. *See* Great American Mot. at 24–25. Great American specifically argues that in the absence of a breach of the insurance contract, there can be no bad faith. *See, e.g.*, *Manzurek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) ("California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing."); *Waller*, 11 Cal. 4th at 19 ("It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." (emphasis omitted)).

Theos does not contest the fact that if there is no coverage, then Great American cannot be liable for bad faith. Indeed, Theos's only argument is that there was a duty to defend and that as a

United States District Court
Northern District of California

result, there remains a factual question as to the reasonableness of Great American's refusal to defend. Theos Mot. at 14–15.

However, because the Court already found that coverage was not due and granted summary judgment on Great American's duty to defend and indemnify claims, as a matter of law, Theos's bad faith claim fails. Therefore, the Court GRANTS Great American's motion for summary judgment on Theos's bad faith claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Great American's motion for summary judgment and DENIES Theos and Bhatia's cross-motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: February 7, 2019

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

25